UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD J. THOMPSON, | ) Case No. 1:18CV1938 |
| Plaintiff, | ) |
| | ) JUDGE PAMELA A. BARKER |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) <u>REPORT AND RECOMMENDATION</u> |

Plaintiff Richard J. Thompson ("Thompson" or "claimant") has challenged the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision should be remanded for further proceedings.

I. PROCEDURAL HISTORY

On November 30, 2016, Thompson filed an application for DIB alleging disability beginning September 30, 2016. (R. 9, Transcript ("tr."), at 11, 189-190, 226-234, 235-244.) His application was denied initially and upon reconsideration. *Id.* at 74-89, 90-102. Thereafter, Thompson filed a request for a hearing before an administrative law judge (ALJ). *Id.* at 123-124.

The ALJ held a hearing on April 13, 2018. (R. 9, tr., at 26-73.) Thompson appeared at the hearing, was represented by counsel, and testified. *Id.* at 28, 34-63. A vocational expert ("VE") attended the hearing by telephone and provided testimony. *Id.* at 28-29, 63-70. On May 9, 2018, the ALJ issued his decision and concluded claimant was not disabled. *Id.* at 11-20. The Appeals Council denied Thompson's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1-3.

On August 23, 2018, Thompson filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Thompson asserts that the ALJ erred when considering the opinions from a treating psychiatrist; and, further argues that the ALJ violated SSR 16-3P. (R. 11, PageID #: 672.)

## II. PERSONAL BACKGROUND INFORMATION

Thompson was born in 1970, and was 45 years old on the alleged disability onset date. (R. 9, tr., at 18, 189, 235.) He has a high school education, is able to communicate in English, and has past work as caster. *Id.* at 18, 36, 64, 237, 239.

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Thompson's brief alleging error by the ALJ. As noted earlier, Thompson applied for DIB benefits on

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

2

November 30, 2016, alleging disability beginning September 30, 2016. (R. 9, tr., at 11, 189-190.) Thompson listed the physical or mental conditions that limit his ability to work as "bi-polar." *Id.* at 238.

On initial review, state agency physician Leslie Green, M.D., completed a physical residual functional capacity assessment on January 25, 2017. (R. 9, tr., at 83-84.) Dr. Green opined that Thompson was limited to lifting and carrying fifty pounds occasionally, and twenty-five pounds frequently. *Id.* at 83. The claimant was capable of standing, walking, or sitting for about six hours of an eight-hour workday. *Id.* The doctor opined that Thompson had unlimited ability to push or pull, other than as stated for lifting and carrying. *Id.* Dr. Green found no need for postural, manipulative, visual, communicative or environment restrictions. *Id.* at 84. Dr. Green noted that Thompson had been diagnosed with diabetes mellitus; and considered Thompson's pain symptoms. *Id.*

On reconsideration, state agency physician Bradley J. Lewis, M.D., completed a medical evaluation on April 29, 2017. (R. 19, tr., at 94-95.) Dr. Lewis indicated that no severe physical impairments were documented, and no changes in physical condition had been alleged, other than treatment for pancreatitis that would not last twelve months. *Id.*

State agency reviewing psychologist, Janet Souder, Psy.D., determined on February 21, 2017, that Thompson had mild difficulty in understanding, remembering, or applying information; and moderate difficulties in interacting with others, in maintaining concentration, persistence or pace, and in adapting or

3

managing himself. (R. 9, tr., at 81-82 (psychiatric review technique).) Dr. Souder completed a mental residual functional capacity assessment, in which she found that Thompson did not have understanding or memory limitations, but was moderately limited in his ability to maintain attention and concentration for extended periods, and in his ability to work in coordination with, or in proximity to, others without being distracted by them. *Id.* at 84-85. The psychologist also assessed that claimant was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* 85. Dr. Souder assessed Thompson is capable of tasks that are static and repetitive in nature. *Id.*

In addition, the psychologist indicated that Thompson was moderately limited in his ability to interact appropriately with the general public and in his ability to get along with coworkers without distracting them or exhibiting behavioral extremes. (R. 9, tr., at 85.) Dr. Souder assessed he should be limited to superficial interaction with others. *Id.*

Dr. Souder also indicated that Thompson was moderately limited in his ability to respond appropriately to changes in the work setting. *Id.* She opined that, due to depression, he should be limited to tasks that do not require frequent changes in routine. *Id.* at 86.

On reconsideration dated April 28, 2017, state agency reviewing psychologist, Vicki Warren, Ph.D., adopted Dr. Souder's psychiatric review technique findings—

4

concluding that Thompson had mild difficulty in understanding, remembering, or applying information; and moderate difficulties in interacting with others, in maintaining concentration, persistence or pace, and in adapting or managing himself. (R. 9, tr., at 95-96.) Dr. Warren's mental RFC assessment was also identical with Dr. Souder's assessment. *Id.* at 97-99.

On January 29, 2018, Khoa Tran, M.D., completed four forms: A one-page form, entitled "Off-Task/Absenteeism Questionnaire," a one-page form, "Medical Statement Concerning Depression, Bipolar, and Related Disorders," another one page form entitled, "Medical Statement Concerning Anxiety and Obsessive Compulsive Disorders," and an "Anger Management Statement." (R. 9, tr., at 579-583.) Dr. Tran indicated, on the off-task questionnaire, that Thompson would be off-task at least 20% of the time at work and his impairments or treatment would cause him to be absent from work about four times per month. *Id.* at 579. The doctor indicted Thompson's impairment as "bipolar," and noted it would frequently cause an inability to concentrate or focus on a sustained basis. *Id.* Dr. Tran also noted that claimant had pain in his back and neck. *Id.*

On the medical statement concerning depression and bipolar, Dr. Tran indicated that Thompson was diagnosed with depressive disorder, with depressed mood, diminished interest, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating, and thoughts of death or suicide. (R. 9, tr., at 580.) The doctor also indicated that claimant's bipolar disorder was

5

characterized by pressured speech, decreased need for sleep, distractibility, and manic behavior. *Id.*

Dr. Tran indicated that Thompson had marked limitations in understanding, remembering, or applying information; in interacting with others; in maintaining concentration, persistence or pace, and in adapting or managing himself. (R. 9, tr., at 580-581.) The doctor marked that Thompson's psychiatric disorders were serious and persistent. *Id.*

Dr. Tran noted in the medical statement that claimant's anxiety disorder was characterized by "restlessness," "easily fatigued," "irritability," "muscle tension" or "sleep disturbance." (R. 9, tr., at 581.) His panic disorder was characterized by panic attacks, followed by a persistent concern about additional panic attacks, and disproportionate fear or anxiety about being in public situations. *Id.* Additionally, Dr. Tran marked that Thompson's obsessive-compulsive disorder was characterized by involuntary, time-consuming preoccupations with intrusive thoughts, as well as repetitive behaviors aimed at reducing anxiety. *Id.*

On the anger management statement, Dr. Tran indicated that the claimant had pervasive and deep issues with anger management. (R. 9, tr., at 582-583.) The anger management document includes twenty "statements" of anger-related issues, and Dr. Tran checked nineteen of those statements as applicable to Thompson. *Id.* For example, Dr. Tran checked a box on the form noting that Thompson "seems to get angry all the time and flies off the handle easily." *Id.* at 582. Although Dr. Tran indicated that claimant "flies off the handle easily," he also marked that

6

claimant "tends to try to keep his anger bottled up." *Id.* Although claimant keeps his anger bottled up, he also "feels like he is out of control and acts before he thinks." *Id.* While Dr. Tran marked that the claimant acts before he thinks when he is angry, he also indicated he keeps his anger to himself and "doesn't let it show." *Id.* Thompson also has violent thoughts toward others when he is angry. *Id.* at 582-583.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his May 9, 2018, decision:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since September 30, 2016, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: bipolar disorder, anger disorder, depression and anxiety (20 C.F.R. 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except the claimant is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); limited to simple work related decisions in using his judgment and dealing with changes in the work setting; and able to occasionally interact with supervisors and coworkers and never to interact with the public.
>
> 6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on *** 1970, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2016, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 9, tr., at 13, 14, 15, 18, 19.)

## V. DISABILITY STANDARD

A claimant is entitled to receive DIB benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R.

8

§404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. §404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* §404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* §404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* §404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* §404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the

9

Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *DeLong v. Commissioner*, 748 F.3d 723, 726 (6th Cir. 2014); *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Thompson presents the following two legal issues for the court's review:

1. Whether the ALJ properly applied the treating physician rule to the medical opinions of treating psychiatrist Khoa Tran, M.D.

2. Whether the ALJ's analysis of Mr. Thompson's statements complied with SSR 16-3P.

(R. 11, PageID #: 672.)

### A. Treating Physician's Opinion.

Thompson asserts that the ALJ erred when considering the opinion from treating psychiatrist Dr. Tran. (R. 11, PageID #: 673.) Although the ALJ determined that Dr. Tran's opinion was not entitled to controlling weight, Thompson argues that the ALJ "failed to actually assign a weight to Dr. Tran's opinion and provide 'good reasons' for the weight assigned." *Id.* at 675.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[2] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other

---

[2] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20 C.F.R. § 404.1527 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.") Plaintiff's claim was filed before March 27, 2017.

11

substantial evidence in the case record." *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley,* 581 F.3d at 406; *Wilson,* 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner,* No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner,* 336 F.3d 469, 477 (6th Cir. 2003)). Although the ALJ generally accords more weight to the opinion(s) of a treating source over those of a non-examining source, for example, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Commissioner,* 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith v. Commissioner,* 482 F.3d 873, 875 (6th Cir. 2007).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley,* 581 F.3d at 406; *Vance,* 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart,* 710 F.3d at 376; *Blakley,* 581 F.3d at 406-407. Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart,* 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in his decision. *Francis v. Commissioner,* No. 09-6263, 2011 WL

915719, at *3 (6th Cir. March 16, 2011). In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion. *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

> The ALJ's underlying decision assessed Dr. Tran's opinion as follows:
>
> Treating physician Khoa Tran, M.D., on January 29, 2018, opined claimant would be likely to be off task at least 20% of the time; would be frequently unable to concentrate, pay attention, and/or focus on a sustained basis; and would be absent about 4 times a month. He also opined claimant had marked impairment in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; adapting or managing himself; and he has minimal capacity to adapt to change in [his] environment. Pursuant to 20 CFR 404.1527 and 20 CFR 416.927, if a treating source opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, we will accord the opinion controlling weight. The undersigned does not find that Dr. Tran's opinion is well supported by the record. Other than the one hospitalization for suicidal ideation, claimant's records have indicated improvement with his mood swings, aggression, stress levels and general coping skills.

(R. 9, tr., at 17-18, internal citations omitted.)

Thompson contends the ALJ's decision does not satisfy the requirements of the treating physician rule. (R. 11, PageID #: 675.) He asserts that the rejection of a treating source's opinion "without assigning an actual weight to the opinion is . . . ground for reversal and remand." *Id.*, citing *Blakley*, 581 F.3d at 407-408. The Commissioner responds that the ALJ offered good reasons for choosing to afford Dr. Tran's opinion less than controlling weight. (R. 12, PageID #: 686.)

It is apparent that the ALJ determined Dr. Tran's opinion was not entitled to controlling weight, although he did not expressly state such.  Instead, the ALJ reviewed the standards under which a treating source opinion is accorded controlling weight, such as an opinion that is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." (R. 9, tr., at 18.)  The ALJ then concluded that he "does not find that Dr. Tran's opinion is well supported by the record," *id.,* thereby implicitly finding that the opinion is not entitled to controlling weight.  As discussed above, a treating physician's opinions is only given deference when it is well-supported by objective medical evidence. *See Gayheart*, 710 F.3d at 376; *Vance*, 2008 WL 162942, at *3.  The ALJ cited pertinent record evidence to support his statement that "claimant's records have indicated improvement with his mood swings, aggression, stress levels and general coping skills," contrary to the limitations opined by Dr. Tran.  (R. 9, tr., at 18, citing MER.)

But even when a treating source's opinion is not entitled to controlling weight, there remains a presumption that the opinion of a treating physician is entitled to great deference. *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009) (citing *Rogers v. Commissioner*, 486 F.3d 234, 242 (6th Cir. 2007)).  The Sixth Circuit, in *Blakely*, stated that a finding that a treating source opinion is inconsistent with other substantial evidence "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley,*

14

581 F.3d at 408 (quoting S.S.R. 96-2p).[3] An ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 408; 20 C.F.R. § 404.1527(c). Here, the ALJ did not state what weight, if any, he accorded to Dr. Tran's opinion.

Having assigned the treating physician's opinion less than controlling weight, albeit implicitly, the ALJ was then required to assess that opinion as he would any medical opinion evidence. 20 C.F.R. § 404.1527(c). But there is no indication, in the ALJ's brief discussion of Dr. Tran's opinion, that the ALJ considered any of the other relevant factors beyond supportability; there is no reference to other pertinent factors such as the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the consistency of the opinion with the record as a whole, or the specialization of the source. *See* 20 C.F.R. § 404.1527(c); *see generally Gayheart*, 710 F.3d at 379. The ALJ's findings concerning the treating physician's opinion are not supported by substantial evidence, because the decision fails to set forth the weight assigned to the opinion, the factors considered in evaluating the opinion and the reasons supporting the assigned weight. *See, e.g., Cole v. Astrue*, 661 F.3d 931, 939-940 (6th Cir. 2011); *Blakley*, 581 F.3d at 408.

---

[3] The Social Security Administration, in final rules effective March 27, 2017, has rescinded SSR 96-2p, *see* 82 *Fed. Reg.* 5845 (Jan. 18, 2017), although relevant regulations covering these topics remain in force. *See, e.g.*, 20 C.F.R. § 404.1527 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.")

15

A more thorough consideration of the treating physician's opinion is required. The decision should be remanded for a more robust explanation of the weight given to the treating physician Dr. Tran's opinion. *See, e.g.*, *Cole*, 661 F.3d at 940; *Hensley*, 573 F.3d at 267 (citing *Wilson*, 378 F.3d at 545); *Houston v. Commissioner*, No. 1:17CV207, 2018 WL 4693945, at *4 (S.D. Ohio Sept. 29, 2018) (citing *Hensley*); *Dalton v. Colvin*, No. 3:16CV57, 2017 WL 343430, at *9 (S.D. Ohio Jan. 24, 2017), *adopted by* 2017 WL 766908 (S.D. Ohio Feb. 27, 2017).

B. Analysis of Symptoms

Thompson's second issue for review concerns: "Whether the ALJ's analysis of Mr. Thompson's statements complied with SSR 16-3p." (R. 11, PageID #: 672, 675.)

The claimant's statements as to "pain or other symptoms will not alone establish that [he is] disabled...." *Walters*, 127 F.3d at 531 (quoting 20 C.F.R. § 404.1529(a)). The Sixth Circuit has established a two-part test to evaluate complaints of disabling symptoms when the symptoms form a basis of the claimant's disability claim. *Rogers*, 486 F.3d at 247; *see also* SSR 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017).[4] First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* (*citing* 20 C.F.R. § 416.929(a)).

---

[4] Social Security Ruling 16-3p superseded SSR 96-7p, and is to be used by ALJs when making determinations and decisions on or after March 28, 2016. SSR 16-3P, 2017 WL 5180304, at *1.

16

If the first test is satisfied, then the ALJ must evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant's allegations of pain "based on a consideration of the entire case record." *Id.* Social Security Ruling 16-3p lists the factors relevant to the ALJ's determination at this step. These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain; and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7-*8; *see, e.g.*, *Morrison v. Commissioner*, No. 16-1360, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017). An ALJ is not required to expressly address all the factors listed in SSR 16-3p, but the decision should sufficiently articulate an assessment of the evidence to assure the court that the ALJ considered all relevant evidence. *Cross v. Commissioner*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

Here, the ALJ concluded that Thompson had medically determinable impairments ("MDIs") of bipolar disorder; anger disorder; depression and anxiety.

17

(R. 9, tr., at 13, 16.)  The ALJ stated that Thompson alleged numerous symptoms related to his anger disorder, such as becoming violent and emotional, having trouble focusing and staying wake due to medication, and trouble sleeping.  *Id.* at 16.  The ALJ found that the claimant's MDIs could reasonably be expected to produce his alleged symptoms; "however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.*  The next paragraph, however, contains only the following fragment, verbatim:  "As for the claimant's statements about the intensity, persistence and limited effects of his or her symptoms, they are inconsistent because".  *Id.*

Thompson argues that the ALJ's analysis is incomplete because it lacks specific reasons for discrediting his alleged symptoms.  (R. 11, PageID #: 677.)  The Commissioner concedes that the ALJ did not finish the above quoted sentence, but contends that the subsequent paragraphs provide the necessary explanation for the ALJ's evaluation of the claimant's subjective symptoms.  (R. 12, PageID #: 684.)  Indeed, the following paragraphs of the ALJ's decision address some of the SSR 16-3p factors, noting, for example, that "Claimant is able to mow the lawn, walk his dog, and go shooting at the shooting range"; "he also rides his motorcycle"; he "has indicated that physically he is able to do anything"; he goes hunting; his stress level has reduced "since going to counseling"; his "medical notes indicate he did not have problems with aggression"; "his mood swings were stabilized…in August 2017"; "[i]n

18

March 2018, claimant's record indicate[s] an increased ability to manage his anger as well as improved coping skills, and was no longer waking up crying"; and "he was snow-blowing driveways for money". *See generally* R. 9, tr., at 16-17. Even with this additional explanation, the court is left to speculate whether the above sentence-fragment is merely the result of an editing oversight, or whether the ALJ's original intention was to include additional evidentiary support, after the word "because," to explain the purported inconsistency between claimant's "statements about the intensity, persistence and limiting effects of his…symptoms" and the record. *Id.* at 16.

Although reading the decision as a whole could enable the court to identify pertinent information to fill in the analytical void in the ALJ's incomplete paragraph and complete the logical bridge between the record evidence and discounted symptoms, the court finds, under these facts, that such would not be appropriate, because it is not this court's role to resolve conflicts or inconsistencies in the evidence, or to decide questions of credibility. *DeLong,* 748 F.3d at 726; *Wright,* 321 F.3d at 614. Moreover, even if this court were not to recommend remand for consideration of only Thompson's second issue, that is not the case here. Because the court has recommended remand on the basis of the treating physician rule, remand is also recommended to permit the Commissioner and ALJ to evaluate the intensity, persistence, and limiting effects of Thompson's symptoms on his ability to do basic work activities.

## VIII. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is not based on substantial evidence in the record. Accordingly, that decision should be remanded.

Date: July 19, 2019

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).